Matter of Brown v Erie County Bd. of Elections (2021 NY Slip Op 05014)





Matter of Brown v Erie County Bd. of Elections


2021 NY Slip Op 05014


Decided on September 16, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 16, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, LINDLEY, AND WINSLOW, JJ.


876.1 CAE 21-01234

[*1]BYRON W. BROWN, PETITIONER-RESPONDENT,
v
ERIE COUNTY BOARD OF ELECTIONS, ET AL., RESPONDENTS, AND INDIA B. WALTON, RESPONDENT-APPELLANT. 






DOLCE FIRM, BUFFALO (SEAN E. COONEY OF COUNSEL), FOR RESPONDENT-APPELLANT. 
BRYAN L. SELLS, LLC, ATLANTA, GEORGIA (BRYAN L. SELLS, OF THE GEORGIA BAR, ADMITTED PRO HAC VICE, OF COUNSEL), AND STROOCK & STROOCK & LAVAN LLP, NEW YORK CITY, FOR PETITIONER-RESPONDENT.


 Appeal from a judgment (denominated order) of the Supreme Court, Erie County (Paul Wojtaszek, J.), entered September 7, 2021 in a proceeding pursuant to Election Law article 16. The judgment granted the petition, declared Election Law § 6-158 (9) unconstitutional and directed that petitioner's name shall appear on the general election ballot of November 2, 2021, as a candidate of the Buffalo Party for the office of Mayor of the City of Buffalo. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law without costs, the petition is dismissed, the declaration is vacated and the second decretal paragraph is vacated.
Memorandum: Petitioner unsuccessfully sought the Democratic Party nomination for the office of Mayor of the City of Buffalo in the primary election held on June 22, 2021. He subsequently collected signatures on an independent nominating petition for that office as a candidate of the Buffalo Party and submitted the nominating petition to respondent Erie County Board of Elections (Board) on August 17, 2021. Objections were filed and, after conducting a hearing, the Board invalidated the nominating petition on the ground that it was not timely filed pursuant to Election Law § 6-158 (9). Section 6-158 (9), which formerly required independent nominating petitions to be filed between 11 and 12 weeks prior to the general election (see 
§ 6-158 [former (9)]), was amended in 2019, as part of a general overhaul of election dates and deadlines intended to bring state law into compliance with the federal Military and Overseas Voter Empowerment Act (see Assembly Mem in Support, Bill Jacket, L 2019 ch 5), to provide that "[a] petition for an independent nomination for an office to be filled at the time of a general election shall be filed not earlier than twenty-four weeks and not later than twenty-three weeks preceding such election" (L 2019, ch 5, § 13). In 2021, the window for filing a nominating petition was between May 18 and May 25.
Petitioner thereafter commenced this proceeding pursuant to Election Law article 16 seeking to validate his nominating petition and asserting that section 6-158 (9) was unconstitutional. Supreme Court granted the petition, declared section 6-158 (9) "unconstitutional in that the deadline to file Independent Nominating Petitions is excessively early," and ordered the Board to add petitioner's name to the general election ballot. India B. Walton (respondent) appeals, and we now reverse.
States "retain the power to regulate their own elections" (Burdick v Takushi , 504 US 428, 433 [1992]) and are permitted to "enact reasonable regulations of parties, elections, and ballots to [*2]reduce election- and campaign-related disorder" (Timmons v Twin Cities Area New Party , 520 US 351, 358 [1997]; see generally Washington State Grange v Washington State Republican Party , 552 US 442, 451 [2008]). The degree of scrutiny used to analyze the constitutionality of a state election regulation depends on the severity of the regulation's burden on the constitutional rights of candidates and their supporters (see Anderson v Celebrezze , 460 US 780, 789 [1983]). If that burden is severe, the law "must be narrowly drawn to advance a state interest of compelling importance" (Burdick , 504 US at 434 [internal quotation marks omitted]; see Norman v Reed , 502 US 279, 288-289 [1992]). A provision imposing "only reasonable, nondiscriminatory restrictions," however, can be justified by a state's "important regulatory interests" (Burdick , 504 US at 434 [internal quotation marks omitted]) and is subject to a review that is "quite deferential" and requires "no elaborate, empirical verification" (SAM Party of New York v Kosinski , 987 F3d 267, 274 [2d Cir 2021] [internal quotation marks omitted]). The totality of a state's overall plan of election regulation should be considered in determining the severity of the restrictions (see Storer v Brown , 415 US 724, 737 [1974], reh denied 417 US 926 [1974]; Green Party of New York State v New York State Bd. of Elections , 389 F3d 411, 419 [2d Cir 2004]).
" '[T]he hallmark of a severe burden is exclusion or virtual exclusion from the ballot' " (Libertarian Party of Connecticut v Lamont , 977 F3d 173, 177 [2d Cir 2020], quoting Libertarian Party of Kentucky v Grimes , 835 F3d 570, 574 [6th Cir 2016], cert denied — US &mdash, 137 S Ct 2119 [2017]), and a review of New York's overall Election Law scheme with respect to independent candidates shows that there was no such exclusion here. Candidates seeking a party's designation for an office in 2021 collected signatures beginning on March 2 and were required to file their designating petitions by March 25; the primary election was held on June 22 (see Election Law §§ 6-158 [1]; 8-100 [1] [a]). Candidates seeking an independent nomination for an office in 2021 collected signatures beginning on April 13 and were required to file their nominating petitions by May 25 (see §§ 6-138 [4]; 6-158 [9]). An independent nominating petition for the office of Mayor of Buffalo must include 750 signatures from registered voters of any party affiliation (see §§ 6-138 [1]; 6-142 [2] [a]), while a candidate for a party designation for that office must collect 600 signatures from the enrolled voters of that party (see § 6-136 [2] [d]).
That combination of rules for independent candidates in New York—a signature requirement substantially similar to that applicable to party candidates and a petition deadline that falls two months after the deadline for party candidates and one month prior to the primary election—is similar to election regulations in other states that have been found not to impose a severe burden on the constitutional rights of candidates and voters (see Swanson v Worley , 490 F3d 894, 905-910 [11th Cir 2007]; Lawrence v Blackwell , 430 F3d 368, 373-374 [6th Cir 2005], cert denied 547 US 1178 [2006]; Wood v Meadows , 207 F3d 708, 712-713 [4th Cir 2000]; Council of Alternative Political Parties v Hooks , 179 F3d 64, 74-78 [3d Cir 1999]; Trudell v State , 193 Vt 515, 522-527, 71 A3d 1235, 1241-1245 [2013]; Browne v Bayless , 202 Ariz 405, 406-408, 46 P3d 416, 417-419 [2002], cert denied 537 US 1088 [2002]; cf. Graveline v Benson , 992 F3d 524, 536-539 [6th Cir 2021]).
Because a "reasonably diligent candidate" could be expected to meet New York's requirements for independent candidates and gain a place on the ballot (Libertarian Party of Connecticut , 977 F3d at 178 [internal quotation marks omitted]; see SAM Party of New York , 987 F3d at 276; see generally Munro v Socialist Workers Party , 479 US 189, 199 [1986]) and because those requirements do not unfairly discriminate against independent candidates (see generally Burdick , 504 US at 434; Anderson , 460 US at 793-794), we conclude that Election Law § 6-158 (9) places only a minimal burden on the constitutional rights of those candidates and their voters.
Moreover, we note that petitioner challenges the application of Election Law § 6-158 (9) to a Buffalo mayoral race, a local election that does not implicate any national interests. Most cases that have struck down state election laws as unconstitutional have done so in the context of their impact on federal elections, events in which the national interest is greater and the state interest is less important (see Anderson , 460 US at 794-795; see also Council of Alternative Political Parties , 179 F3d at 72). We further note that petitioner is far from the archetypal "independent candidate" whose interests Anderson and its progeny seek to protect (see 460 US at 790, 793-794). Petitioner has been in elective office for the last 25 years, has served four terms [*3]as Mayor of Buffalo, and first chose to participate in the Democratic primary election in lieu of filing a timely independent nominating petition. States are constitutionally permitted to preclude candidates who lose one primary election from subsequently running on another ballot line (see Storer , 415 US at 735-736; see also Stevenson v State Bd. of Elections , 794 F2d 1176, 1177 [7th Cir 1986]).
Applying the lesser degree of review applicable to regulations that do not place a severe burden on constitutional rights (see Burdick , 504 US at 434, 439; SAM Party of New York , 987 F3d at 274), we conclude that several legitimate state interests justify the deadline imposed by Election Law § 6-158 (9), including ensuring the integrity and reliability of the electoral process (see Anderson , 460 US at 788 n 9; Storer , 415 US at 733), promoting political stability at the expense of factionalism (see Timmons , 520 US at 366-367; Swanson , 490 F3d at 911-912), and upholding the state's administrative duty to meet federal deadlines for the mailing of overseas and military ballots (see generally Lawrence , 430 F3d at 375). Inasmuch as section 6-158 (9) is not unconstitutional, the court erred in granting the petition.
In light of our determination, we need not address respondent's remaining contentions.
Entered: September 16, 2021
Ann Dillon Flynn
Clerk of the Court